**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FLOYD SELTZER, JR.,**<br>**Plaintiff**<br><br>**v.**<br><br>**SOUTH MANHEIM TOWNSHIP, by and through their elected officials, JOHN BRENNAN, SALVADOR INGAGLIO, CHRISTY JOY and ROADMASTER KERBY LEWIS,**<br>**Defendants** | : | **No. 3:24cv1142**<br><br>**(Judge Munley)** |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Floyd Seltzer, Jr. alleges that the roadmaster in his rural community destroyed portions of his property after the plaintiff attended public meetings and criticized township supervisors. Contending that the township, the township supervisors, and the roadmaster violated his constitutional rights, Seltzer filed this action asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983").[1] Before the court is a motion for summary judgment filed by the defendants. For the reasons set forth below, the motion will be granted.

FILED
SCRANTON
AUG 27 2026
PER JKC
DEPUTY CLERK

[1] The court has subject matter jurisdiction under 28 U.S.C. § 1331.

## Background

South Manheim Township is located in Schuylkill County, Pennsylvania. The plaintiff owns two properties in the township, a farm property and a residence property.[2] (Doc. 35, Def. SOF ¶¶ 8–10, 14). The residence property is located at 1335 Schuylkill Mountain Road in the township. (Doc. 35-2, Pl. Resp. to Interrogatories ¶ 1). Plaintiff's farm property is located at the intersection of Schuylkill Mountain Road and South Berne Drive in the township. (Doc. 35, Def. SOF ¶ 12; see also Doc. 35-4, Pl. Dep. Exs. at ECF p. 1).

South Manheim Township is governed by a board of supervisors. (Doc. 35, Def. SOF ¶ 4). Under Pennsylvania law, it is a township of the second class. Id. ¶ 3. Three of the individual defendants in this matter, John Brennan, Christy Joy, Salvador Ingaglio, are members of the board of supervisors. Id. ¶¶ 4–6. Defendant Brennan is the current board chairman. Id. ¶ 4. He has served as a member since at least 2018. Id. Defendant Ingaglio has served since at least 2018. Id. ¶ 6. Defendant Joy has served since January 2022. Id. ¶ 5. The

[2] Unless otherwise noted, this factual background derives from defendants' statement of material facts ( "SOF") filed pursuant to the Rules of Court for the Middle District of Pennsylvania ("Local Rules"). (Doc. 35). This memorandum includes a discussion of the plaintiff's failure to properly address defendants' assertions of fact in conjunction with the motion.

fourth individual defendant, Corby Lewis, is the roadmaster of South Manheim Township.[3] Id. ¶ 7.

Pursuant to 53 PA. STAT. § 67325, the township engages in rotational mowing along its roads twice per year to ensure that public roadways are clear of weeds and other foliage that may be growing into the roads. Id. ¶ 16. The township hires seasonal employees each spring for its mowing program. (Doc. 35-1, Def. Ex. A, K. Handling Decl. ¶ 10).

The township has mowed near Seltzer's farm property since at least 2012, the year that he purchased the land. (Doc. 35, SOF ¶¶ 11, 17). Plaintiff first noticed mowing at his residential property in 2018. Id. ¶ 18. The mowing of both properties forms the basis of plaintiff's civil rights claims in this matter, including his First Amendment retaliation claim.

Specifically, Seltzer attended several board of supervisors' meetings in April, May, and July 2018. Id. ¶¶ 19–22. At the meetings, he commented on the 5:00 PM start time of board meetings, the construction and costs of a municipal building project, and the lack of an advertisement for a vacancy on the board. Id.

Thereafter, on or around July 25, 2018, the township mowed the shoulder along the road abutting the plaintiff's residential property. Id. ¶ 23. During this

[3] Defendant Corby Lewis is named as "Kerby Lewis" in the plaintiff's complaint.

instance of mowing, a township employee, Kermit Fix, cut down wildflowers and left a rut. Id.

Approximately two months later, on September 15, 2018, Seltzer attended a supervisors' meeting and reported the damage. Id. ¶ 24. This was the first and only time that South Manheim Township had mowed flowers on the plaintiff's residential property. Id. ¶ 26.

It was not the last issue Seltzer encountered with the township's mowing operations. In the spring of 2019, the township conducted mowing near Seltzer's farm property. (Doc. 35 ¶¶ 28, 33). On that occasion, flowers were cut and an embankment was damaged. Id. ¶ 28. On July 3, 2019, plaintiff attended a supervisors' meeting and reported that his flowers had been mowed once again. Id. ¶ 29.

In response, the board of supervisors directed Defendant Lewis to meet Seltzer at the farm property and put up stakes so the mowing crew would know to avoid the flowers in the future.[4] Id. ¶ 30. It was also agreed that the township would only perform one pass with the mower. Id. ¶ 32.

[4] To the extent that Seltzer's correspondence to the court may be construed as a response to defendants' statement of material facts, the plaintiff indicates that there were already metal stakes with colored string on the top to mark where the flowers were located. (Doc. 42 at ECF p. 2). Seltzer indicates that there are photographs of those stakes laying in the flowers after being knocked over during mowing. Id.

Thereafter, Seltzer attended supervisors' meetings in October and November of 2019 and in February of 2020. Id. ¶¶ 35–37. During the meetings, Seltzer disagreed with the township's decision to purchase a hedge trimmer, commented on the unequal apportionment of township funds between several volunteer fire associations, and expressed that township meetings were being held too early. Id.

In July 2020, Defendant Lewis, the township roadmaster, noted that the no-mow areas Seltzer had identified were becoming overgrown and foliage was beginning to hang over into the road. Id. ¶¶ 39–40. In Lewis's estimation, this growth needed to be trimmed. Id. ¶ 39. Thereafter, on July 2, 2020, the board of supervisors directed the township secretary to send plaintiff a letter offering him five days to mow the property before the township did so. Id. ¶ 42.

Seltzer did not mow the property himself.[5] Id. ¶ 43. On July 13 and 14, 2020, township employee Earl Phillips engaged in trimming and mowing on Schuylkill Mountain Road. Id. ¶ 44.

Also on July 2, 2020, the township sent Seltzer correspondence indicating that he had been reappointed to the township planning commission for a four-

[5] Plaintiff indicates that he "stopped weeding the flowers" because the township kept mowing them and he believed he was wasting his time. (Doc. 42 at ECF p. 1). He also requested that the township secretary place the matter on the agenda for the next public meeting. Id. at ECF pp. 2–3.

year term. (Doc. 35-4 at ECF p. 68). In his deposition, the plaintiff testified that he served through the end of his term, or until December 31, 2024, after he filed this lawsuit. (Doc. 35-3, 111:10–112:16).

Seltzer attended the August 5, 2020 board of supervisors meeting to discuss the letter he received from the township. (Doc. 35, SOF ¶ 45). He accused the township of intentionally damaging his property over the previous two years. Id. On August 7, 2020, plaintiff emailed the township and accused supervisors and the roadmaster of singling him out. Id. ¶ 46. On September 2, 2020, plaintiff emailed the township with photographs of the damage to his property. Id. ¶ 47.

Also on September 2, 2020, the board of supervisors authorized the township road crew to clear out the right of way on the embankment near Seltzer's property because they felt it posed a safety hazard.[6] Id. ¶ 48. In June and August 2021, and again in July 2022, the township conducted more mowing and weed whacking along Schuylkill Mountain Road, apparently without incident. Id. ¶¶ 49, 51.

---

[6] The meeting minutes from the September 2, 2020 board of supervisors meeting reflect that Defendant Ingaglio made a motion to use weed whackers to clear plaintiff's property, that it was seconded by Supervisor Noll, and unanimously carried. (Doc. 35-4 at ECF pp. 46–49). In response to this paragraph, plaintiff indicates that the "board of supervisors never made, seconded, or passed a motion authorizing the road crew to use weed whackers on the property." (Doc. 42 at ECF p. 3; see also Doc. 35-3, Pl. Dep., 71:7-21). As discussed below, this factual dispute is not material.

In 2023, mowing occurred on Seltzer's farm property between September 18 and 21. Id. ¶ 52. The mowing resulted in damage to his plantings and an embankment. Id. On October 4, 2023, plaintiff appeared at a board of supervisors' meeting. Id. ¶ 53. He complained that his property was again damaged and that flowers were cut. Id.

Seltzer further asserts that the township has targeted his properties rather than other landowners who have "safety hazards" within the township's right-of way. (Doc. 1, Compl. ¶¶ 17–18). As examples, at 1177 Schuylkill Mountain Road, leaves were left on the road in December 2020, March 2021, March 2023, April 2023, and December 2023, which the township did not remove.[7] (Doc. 35, SOF ¶ 55). At 1250 Schuylkill Mountain Road, a property has bushes and a fence at the corner of a turn. Id. ¶ 56. Additionally, at 1265 Schuylkill Mountain Road, a large rock sits inches from the roadway and has been in that location since approximately January 2024. Id. ¶ 57. Per Seltzer, the township's failure to remove these hazards violates the Equal Protection Clause of the Fourteenth Amendment in light of the damage done to his property.

Seltzer filed this action on July 11, 2024. Defendants responded to the complaint with a comprehensive motion to dismiss. Upon consideration of that

[7] Although the record is not clear, this address appears to be a property in the vicinity of Seltzer's farm property.

motion, the court dismissed all claims except for plaintiff's First Amendment retaliation and class-of-one equal protection claims.[8] Seltzer v. S. Manheim Twp. by & through Brennan, No. 3:24CV1142, 2025 WL 1139279 (M.D. Pa. Apr. 17, 2025). With the motion for summary judgment, defendants renew many of their previous arguments. On this occasion, the defendants will prevail.

**Legal Standard**

Summary judgment is proper "when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law." Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010) (citation omitted); see also FED. R. CIV. P. 56(a). "A fact is material if its resolution 'might affect the outcome of the suit under the governing law,'. . . [a]nd a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Mall Chevrolet, Inc. v. Gen. Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

At this stage, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. All "facts in dispute," Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 187 (3d Cir. 2015), and all "inferences to be drawn

[8] The court provided Seltzer with leave to amend his Section 1983 due process claims. After plaintiff did not do so within the timeframe provided, the court dismissed those claims with prejudice. (Doc. 18).

from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters & Joiners, 676 F.2d 81, 84 (3d Cir. 1982). Furthermore, "a court's role remains circumscribed in that it is inappropriate for a court to resolve factual disputes and to make credibility determinations." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). "[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Id. (citations omitted).

A motion for summary judgment may also be granted where a moving party demonstrates that the nonmoving party "has not made 'a showing sufficient to establish the existence of an element essential to that party's case . . . on which that party will bear the burden of proof at trial.' " Mall Chevrolet, Inc., 99 F.4th at 630 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (emphasis removed)). After a moving party carries their burden to show the absence of a genuine, material factual dispute, Rule 56 flips the burden onto "the nonmovant to 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts

showing that there is a genuine issue for trial.' " Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d Cir. 2017) (quoting Celotex Corp., 477 U.S. at 324 (emphasis removed) (alteration in original)). The non-moving party must "do more than 'simply show that there is some metaphysical doubt as to the material facts." Id. (quoting Matsushita, 475 U.S. at 587).

On that last point, the Local Rules require that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Where an opposing party fails to respond, those facts in the moving party's statement are considered admitted. Id.

In this matter, defendants filed a properly supported statement of material facts. (Doc. 35). Plaintiff, then represented by counsel, did not file a response to the statement in violation of the Local Rules. After defendants' motion was fully briefed, counsel for plaintiff filed a motion to withdraw citing an irreconcilable conflict based on the plaintiff's repeated pro se correspondence to the court.

(Doc. 43). The motion was granted by way of an order dated May 13, 2026. (Doc. 47).

Since Seltzer was represented by counsel at the time, the court first issued an order striking certain correspondence. (See Doc. 41 (striking Doc. 38)). Additional pro se correspondence prompted counsel's motion to withdraw. (Doc. 42). When granting the motion to withdraw, the court did not strike all of plaintiff's additional correspondence, recognizing that the first three pages could be construed as his response to defendants' statement of material facts.[9] Id. Furthermore, the court offered plaintiff additional time to secure new counsel and file a supplemental response to the defendants' statement of material facts. Id. The order warned Seltzer that he was at risk of having all matters in the statement deemed admitted. Id. To date, plaintiff has not filed a supplement and the time afforded by the court has expired.

The court takes subsequent filings as evidence that Seltzer wishes to see his case through on his own without counsel. (Doc. 51, Resp. to Def. Mot. for Sanctions). Pro se litigants like plaintiff are required to "abide by the same rules that apply to all other litigants." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Additionally, flexibility toward pro se litigants does not require the court to "indulge evidentiary deficiencies." Id. at 704–05.

[9] The remaining six pages were stricken.

Therefore, the matters within defendants' statement of facts reviewed above will be deemed admitted and undisputed unless rebutted by Seltzer's filings, but only to the extent that they contain citations to countervailing record evidence, or if such facts are plainly contradicted by the record. See FED. R. CIV. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion; [or] grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it[.]").

Notwithstanding this determination, the court has carefully reviewed the evidence supplied by the defendants, which includes plaintiff's deposition testimony, photographs, correspondence, and township meeting minutes. (Docs. 35-1 to 35–13). To the extent that plaintiff asserts he has other evidence in his filings with the court, he has not provided such evidence over the last 90 days since his counsel was permitted to withdraw.

**Analysis**

After considering the parties' arguments and the evidence of record, defendants have demonstrated that there is no dispute of material fact in this case. Based on those undisputed facts, judgment in their favor is warranted as a matter of law.

**1. Statute of Limitations**

To reiterate, Seltzer asserts a First Amendment retaliation claim and a class of one equal protection claim under Section 1983. With their motion for summary judgment, defendants highlight that this action was filed on July 11, 2024. They argue that all claims arising before July 11, 2022 are time-barred. The court agrees.

With respect to the limitations period for Section 1983 claims, the law is well settled:

> The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose. Wallace v. Kato, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). The statute of limitations for a § 1983 claim arising in Pennsylvania is two years. 42 PA. CONS. STAT. § 5524(2); see also Kost v. Kozakiewicz, 1 F.3d 176, 189–90 (3d Cir.1993). Federal law governs a cause of action's accrual date. Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (citation omitted); see also Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known. Barren v. United States, 839 F.2d 987, 990 (3d Cir. 1988).

Kach v. Hose, 589 F.3d 626, 634–35 (3d Cir. 2009).

As noted above, Seltzer's claims involve discrete acts of damage to his property by the township's mowing operations and allegations that such damage was tied to the plaintiff's speech at public township meetings and his participation in township affairs. First Amendment retaliation claims are always individually actionable, even when relatively minor. O'Connor v. City of Newark, 440 F.3d 125, 127–28 (3d Cir. 2006). Individually actionable allegations also cannot be aggregated to support a continuing violation theory of recovery. Id. Thus, any incidents of alleged First Amendment retaliation before July 11, 2022 are time-barred. Furthermore, to the extent that plaintiff's equal protection claim encompasses events prior to July 11, 2022, those matters are likewise barred by the statute of limitations and cannot be aggregated with events that occurred after that date. Patterson v. Strippoli, 639 F. App'x 137, 141 (3d Cir. 2016).

**2. Seltzer's First Amendment Retaliation Claim**

Using July 11, 2022 as the date of cut-off for Seltzer's claims, Earl Phillips used the township boom mower on Schuylkill Mountain Road on July 3, 2022 and July 21, 2022, according to the municipality's employee time records. (Doc. 35-1, K. Handling Decl. ¶ 11 and ECF pp. 14-15). Township employee Curtis Derr used a weed whacker along the road on July 21, 2022. Id. at ECF p. 16. However, Seltzer did not complain about mowing operations that year, according to the summary judgment record.

Rather, Seltzer's first complaint after the cut-off date came in September 2023. (Doc. 35, SOF ¶ 52). Prior to the incident in September 2023, the last record of Seltzer participating at a public meeting is from September 2020, after he had filed charges against Defendants Brennan and Lewis and requested that they be terminated. (Doc. 35-4 at ECF pp. 40–49). Plaintiff has not otherwise identified any event between September 2020 and September 2023 relevant to his First Amendment retaliation claim.

To prove that he experienced retaliation for exercising his First Amendment rights, Seltzer must demonstrate: 1) that he engaged in constitutionally protected conduct; 2) that he experienced retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and 3) a causal link between the constitutionally protected conduct and the retaliatory action. Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006). Under the law, causation may be proven with evidence of (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, (2) a pattern of antagonism coupled with timing, or (3) evidence permitting an inference of causation gleaned from the record as a whole. Watson v. Rozum, 834 F.3d 417, 424 (3d Cir. 2016); Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Speaking at a public meeting is a constitutionally protected activity. The court will assume that the property damage described by the plaintiff is sufficient to deter a person of reasonable firmness from exercising his free speech rights. Even so, a three-year gap between protected speech in September 2020 and adverse action in September 2023 is not reflective of an unusually suggestive temporal proximity. Smith v. Univ. of Scranton, 770 F. App'x 23, 25 (3d Cir. 2019); Blakney v. City of Phila., 559 F. App'x 183, 186 (3d Cir. 2014); Fraser v. Pa. State Univ., 654 F. Supp. 3d 443, 455 n.75 (M.D. Pa. 2023). Any pattern of antagonism in the record between 2018 to 2020 is broken up by this three-year period. The record also does not contain any evidence in this interim period permitting an inference of causation between protected speech and the damage to plaintiff's farm property. Consequently, defendants are entitled to summary judgment on the plaintiff's First Amendment retaliation claim.

**3. Seltzer's Class of One Equal Protection Claim**

Previously, the court determined that Seltzer's complaint stated a plausible class of one equal protection claim. 2025 WL 1139279, at *5–6. Therein, the court noted that "successful equal protection claims may be brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at *5 (quoting Vill. of Willowbrook v. Olech, 528 U.S.

562, 564 (2000) (per curiam) (citation modified)); see also Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006) ("at the very least, to state a claim under [a class of one] theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.").

With their statement of facts, defendants have met their burden to show Seltzer's failure to establish all three of the above elements. Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citing Celotex Corp., 477 U.S. at 323–24). In response, Seltzer "has not set forth specific facts such that a reasonable jury could find in [his] favor[,]" with either direct or circumstantial evidence. Id. (citing Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 251).

First, comparable parties must be similarly situated, which means they must be "alike 'in all relevant aspects.' " Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). As for the other properties identified by Seltzer as receiving different treatment, none of the identified issues relate to the township's mowing operations.

During his deposition, plaintiff indicated that he observed leaves on Schuylkill Mountain Road in March, April, and December 2023 that were not removed by municipal road crews. Id., 95:13–98:7. He further testified that he observed bushes and rocks on other properties along his road in the township

right-of-way that, in his view, posed a hazard. Id., 100:4–102:23. He also admitted that he did not report such issues to the township. Id., 96:12–98:7; 100:4–102:23.

Setting aside any notice issues, Seltzer has not supplied evidence creating a genuine dispute over whether these properties were alike in all relevant aspects, such as evidence of flowers within the right-of-way that had been preserved on other properties or roadside embankments that had not been impacted by mowing operations. Even as to the properties referenced, there is no evidence that the rocks and bushes referenced could have been removed with township equipment as part of biannual mowing. Similarly, there is no evidence that the township's road department addressed seasonal leaf removal in a manner similar to its mowing program. Absent such evidence, the court must conclude that the comparator properties differed in material respects from the plaintiff's properties.

Seltzer must also respond to defendants' motion summary judgment with direct and circumstantial evidence of any of the defendants engaging in intentional conduct. As indicated above, the first legally operative instance of property damage from mowing occurred in September 2023 since Seltzer's claims have been limited to events after July 2022. Within that timeframe, the evidentiary record is sparse. The following facts are undisputed: "mowing

occurred on the [f]arm [p]roperty sometime between September 18, 2023 and September 21, 2023, resulting in damage to the plantings and bank . . . Township records show that Township employee Earl Phillips used the boom mower on September 20, 2023." (Doc. 35 ¶ 52). With respect to that incident, plaintiff testified at his deposition as follows:

> Q. Okay. And my question deals with this 2023 issue with Earl Phillips, do you know if Earl Phillips was at that meeting?
>
> A. I don't know.
>
> Q. With respect to the damage to the bank, they did not direct anyone to damage the bank did they?
>
> A. That I can't answer.
>
> Q. Well, I'm asking what information you do possess. So, do you have any information to possess that anyone of the three-elected supervisors directed Mr. Phillips, or any member of the road crew, to damage your bank?
>
> A. Like I said, I don't know, they are mowing it. It got damaged during mowing.
>
> Q. Okay.
>
> A. I'm not saying they deliberately, how you want to say, the bank with mowing, they don't have to mow so close. So, mowing too close you're damaging it.

(Doc. 35-3, 77:21–78:15).

Such testimony by the plaintiff does not establish a genuine issue of material fact as to whether the township, or its supervisors, or its roadmaster

acted intentionally in 2023. No other evidence in the record suggests intentional conduct, even when construed in a light most favorable to Seltzer.

Finally, under the law, a class of one "can attack intentionally different treatment if it is 'irrational and wholly arbitrary.' " Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 286 (3d Cir. 2004) (quoting Olech, 528 U.S. at 564). This type of claim triggers rational basis review and such review uses "a very deferential standard." Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 156 (3d Cir. 2018). That standard "is met 'if there is any reasonably conceivable state of facts that could provide a rational basis' for the differing treatment." Id. Furthermore, in this area of the law, courts are directed not to use an equal protection claim as license "to judge the wisdom, fairness, or logic of legislative choices." Id. (quoting Heller v. Doe, 509 U.S. 312, 320 (1993)).

Seltzer has not responded to summary judgment with evidence suggesting that the township's conduct in 2023 with respect to mowing his farm property was guided by anything other than a scheduled right-of-way maintenance program, which was authorized by a state statute, 53 PA. STAT. § 67325(c). Therefore, summary judgment in favor of the defendants is also appropriate with respect to the plaintiff's class of one equal protection claim.[10]

[10] Based on this disposition, the court need not reach defendants' other arguments that summary judgment is warranted in favor of South Manheim Township due to plaintiff's failure to demonstrate a genuine issue of material fact with respect to any municipal liability claim.

### 4. Defendants' Motion for Sanctions

Before concluding, defendants also move for sanctions, alleging that Seltzer has violated Rule 11 by sending correspondence to the court while represented. (Doc. 46). Defendants seek an order prohibiting plaintiff from making further pro se communications. Id. ¶ 29. That request for relief is moot given his counsel's withdrawal in this matter. Defendants also seek an order compelling plaintiff to pay reasonable attorneys' fees in preparing the motion for sanctions as well as a previous motion to strike. Id. Given the outcome above, however, the pro se correspondence did not help the plaintiff demonstrate a genuine issue of material fact. The court also does not believe Seltzer acted in bad faith; rather, it appears that the plaintiff sent letters to ensure that he was being heard in this forum. The undersigned will not impose monetary sanctions under such circumstances. Therefore, the motion for sanctions will be denied.

## Conclusion

For the reasons set forth above, the defendants' motion for summary judgment will be granted. The Clerk of Court will be directed to enter judgment in favor of the defendants and against plaintiff in this matter. Defendants' motion for sanctions will be denied. An appropriate order follows.

---

Additionally, the court need not reach any determination as to whether the individual defendants were personally involved in the alleged violations or whether those defendants enjoy qualified immunity.

Date: 8/27/26

JUDGE JULIA K. MUNLEY
United States District Court